UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NELSON ROMERO, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-98 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

State inmate Nelson Romero seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 challenging his Texas state court conviction for possessing a deadly weapon in a penal institution. (Docket Entry No. 3). Respondent Lorie Davis has filed a motion for summary judgment, arguing that Romero's claims are without merit and that he is not entitled to relief. (Docket Entry No. 20). Romero has responded. (Docket Entry Nos. 44, 47, 48). After reviewing the record, the pleadings, and the applicable law, with special consideration given to the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the Court will grant Respondent's motion for summary judgment and deny Romero's petition. The Court will not certify any issue for appellate review.

The Court sets forth the reasons for its adjudication below.

**BACKGROUND**

Romero was imprisoned in the Darrington Unit of the Texas Department of Criminal Justice on May 28, 2006, when a riot broke out. As a result of Romero's

actions during a fight, the State of Texas charged him with the felony offense of possessing a deadly weapon in a penal institution. Clerk's Record at 2. The indictment specified that Romero possessed "a metal rod sharpened to a point." Clerk's Record at 2. The indictment included two enhancement paragraphs based on Romero's prior convictions for aggravated assault and aggravated robbery. Clerk's Record at 2.

The State tried Romero under cause number 58710 in the 23rd Judicial District Court of Brazoria County, Texas. The trial testimony showed as follows:

> Inmate Ricky Zackery testified that [Romero] "tried to take my life" and "tried to kill me" with the shank by stabbing him below the chest and in the shoulder during the prison fight. Zackery testified that he lost consciousness after the fight and was transported to the hospital in an ambulance. Zackery testified that he stayed in the hospital approximately two days, and he was given pain medication for seven days after the incident.
>
> Inmate Adrian Richmond testified at trial that he saw [Romero] stab Zackery and at least one other inmate with a shank during the prison fight. Richmond testified that Zackery was "covered in blood" after [Romero] stabbed Zackery two times, and that "blood was everywhere." Inmate Fred Primes also testified that he saw [Romero] holding a shank during the fight. Primes testified that although he did not see [Romero] stab anyone, other inmates did. Richmond and Investigator Rebecca Dougherty testified that weapons similar to the shank [Romero] used in the prison fight were "capable of causing death or serious bodily injury."
>
> Richmond admitted that his trial testimony differed from one of his initial statements to police, in that (1) he testified at trial that [Romero] held two shanks during the fight, but stated at an earlier point that [Romero] held one shank; and (2) one of his initial statements identified a different inmate as the individual who stabbed Zackery. Richmond testified that "when the shanks came out . . . I mean it happened fast."

*Romero v. State*, 331 S.W.3d 82, 84 (Tex. App. -Houston [14th Dist.], 2010). The jury found Romero guilty and assessed his punishment at thirty years confinement. Clerk's Record at 60, 79.

Through appointed counsel, Romero filed an appeal arguing that the evidence was factually and legally insufficient to sustain his conviction for using a deadly weapon. The Fourteenth Court of Appeals of Texas affirmed his conviction in a published opinion. *Romero v. State*, 331 S.W.3d 82 (Tex. App. -Houston [14th Dist.] Dec. 2, 2010, pet. ref'd). The Texas Court of Criminal Appeals refused Romero's out-of-time petition for discretionary review ("PDR"). *Ex parte Romero*, 2011 WL 5220479 (Tex. Crim. App. Nov. 2, 2011); *Romero v. State*, PDR. No. 1756-11.[1]

Romero did not seek state habeas relief from his conviction or sentence.

On March 31, 2013, Romero filed a federal petition for a writ of habeas corpus and a memorandum brief in support. (Docket Entry Nos. 3, 4). Romero's petition again challenges the factual and legal sufficiency of the evidence supporting his conviction. Respondent has moved for summary judgment,[2] and Romero has responded. This matter is ripe for adjudication.

---

[1] Romero missed the initial deadline for filing a PDR. Romero filed a state habeas application requesting permission to file an out-of-time PDR because the United States Postal Service held his petition for more than a month before returning it for insufficient postage. The Texas Court of Criminal Appeals granted Romero's request and considered his subsequent PDR as if timely filed.

[2] Because Romero did not file a timely reply to the summary judgment motion, his petition was initially dismissed for a failure to prosecute. (Docket Entry No. 22). Romero filed a motion for reconsideration, but subsequently appealed the dismissal. (Docket Entry Nos. 23, 24). The Court of Appeals for the Fifth Circuit vacated the judgment and remanded this case for further

**STANDARD OF REVIEW**

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined"). The States, therefore, "possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). As "a foundational principle of our federal system," state courts "are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing AEDPA's "presumption that state courts know and follow the law"). Given this required deference to the state-court system, several principles circumscribe both the nature of federal habeas review and the availability of federal habeas relief.

Mirroring a foundational principle in federal habeas law, AEDPA "unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

---

proceedings. *Romero v. Stephens*, 624 F. App'x 231, 232 (5th Cir. 2015). Romero has since responded to the summary judgment motion.

States.'" *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (quoting 28 U.S.C. § 2254(a)). Accordingly, "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quotation omitted); *see also Corcoran*, 562 U.S. at 16; *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[O]nly noncompliance with federal law . . . renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Corcoran*, 562 U.S. at 5.

If the inmate has presented federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review. "[A] habeas petitioner has the burden under AEDPA to prove that he is entitled to relief." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000); *see also DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Under AEDPA's rigorous requirements, an inmate may only secure relief after showing that the state court's rejection of his claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's decision. *See White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exist only to "guard against extreme malfunctions in the state criminal justice systems . . . ." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376 (2015) (quotation omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v.*

*Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Richter*, 562 U.S. at 103); *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Respondent moves for summary judgment. Summary judgment is proper when the record shows "that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). AEDPA, however, modifies summary judgment principles in the habeas context. *See Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010) ("Summary judgement in federal habeas is different than in the average civil case."); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (Rule 56 "applies only to the extent that it does not conflict with the habeas rules"), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). For example, § 2254(e)(1), mandating that a state court's findings are presumed to be correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the non-movant. *Smith*, 311 F.3d at 668. Unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and

convincing evidence, such findings must be accepted as correct by the federal habeas court. *See* 28 U.S.C. § 2254(e)(1).

Romero represents himself. Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as are pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (quotation omitted). Accordingly, "[t]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

## ANALYSIS

Romero's federal petition raises one ground for relief urging the same basic arguments he made on direct appeal: the evidence was legally and factually insufficient to support his conviction. On direct appeal, Romero emphasized that, to prove his guilt for possessing a deadly weapon, the evidence had to show that the "shank" he possessed could cause serious bodily injury or death. Romero asserted that the evidence was insufficient because no medical testimony described the extent of the wounds suffered by those Romero stabbed, allegedly preventing jurors from finding that the shank he possessed was a deadly weapon. Thus, Romero argued that the evidence was both factually and legally insufficient to support his conviction.[3]

As discussed at length below, the Court finds that the federal constitution does not require courts to engage in a factual-sufficiency review. The Court also concludes that

---

[3] In his response to the summary judgment motion, Romero claims that trial and appellate counsel were ineffective for not raising certain arguments. This Court will only consider issues Romero has exhausted in the state courts. 28 U.S.C. § 2254(b)(1).

the state court was not unreasonable in finding that legally sufficient evidence supported his conviction.

### A. Factual Sufficiency

Romero only merits federal habeas relief after showing "a violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal constitution establishes baseline requirements for the evidence necessary to support a criminal conviction. The Due Process Clause "requires proof of each element of a criminal offense beyond a reasonable doubt." *Dretke v. Haley*, 541 U.S. 386, 395 (2004) (citing *In re Winship*, 397 U.S. 358, 364-65 (1970)). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court set out the constitutional standard governing whether sufficient evidence supports each element of a charged offense. Under *Jackson*, a reviewing court affirms a jury's conviction if, considering all of the evidence in a light most favorable to the prosecution, a rational trier of fact could have returned a verdict unfavorable to the defendant.

Texas courts now follow *Jackson* in deciding whether the evidence supporting an inmate's conviction is legally sufficient. *See Cary v. State*, 507 S.W.3d 761, 765 (Tex. Crim. App. 2016); *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). States, however, may create protections more rigorous than federal constitutional standards. *See Mills v. Rogers*, 457 U.S. 291, 300 (1982) ("Within our federal system the substantive rights provided by the Federal Constitution define only a minimum. State law may recognize liberty interests more extensive than those independently protected by the Federal Constitution."). Prior to 2010, Texas courts engaged in a sufficiency-of-the-

evidence review broader than that required by *Jackson*. In what became known as the *Clewis* standard, Texas courts crafted a factual-insufficiency-of-the-evidence review which

asked whether the verdict was "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Texas derived that review exclusively from state law. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002) ("The *Clewis* standard is rooted in the Texas constitution."). In 2010, the Court of Criminal Appeals abolished the *Clewis* factual sufficiency review. Texas courts now only apply the federal *Jackson* standard in deciding whether sufficient evidence was presented at trial. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

Romero argues that he merits federal habeas relief because the state court did not engage in a *Clewis* factual-sufficiency review when denying his appeal. Texas based its former factual-sufficiency on state law; the federal constitution, however, does not require that analysis. Federal law does not compel state courts to engage in any sufficiency analysis apart from that outlined in *Jackson*. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted). The state court's failure to apply its

former law does not give rise to a viable federal constitutional issue.[4] Federal review only becomes available if Romero can show that the state court unreasonably applied *Jackson*.

**B.** **Legal Sufficiency**

As stated above, *Jackson* asks whether, viewing the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19; *Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000). Under this standard, a court must refer to "the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, and resolve credibility choices and conflicting inferences in favor of the verdict. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999); *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994).

---

[4] As a subsidiary argument, Romero says that, by failing to apply *Clewis*, the state court "was prohibited from analyzing the credibility of the witnesses," leaving the court to ask only "whether there is any evidence to support each of the elements" and to grant relief "only if there is no evidence to support one of the elements." (Docket Entry No. 47 at 7). Romero bases this argument on a concurring opinion in his case by Justice Charles W. Seymore of the Fourteenth Court of Appeals. Justice Seymore expressed concern that the abandonment of the *Clewis* standard ignored the "factual-conclusivity clause of the Texas constitution." *Romero*, 531 S.W.3d at 85 (Seymore, J., concurring). The federal constitution contains no comparable counterpart and the *Jackson* standard does not require a factual sufficiency review. *Jackson* expressly rejected a "no evidence" standard of review. *Jackson*, 443 U.S. at 314. The federal *Jackson* standard also does not provide for the reassessment of credibility issues. "Determining the weight and credibility of the evidence is within the sole province of the jury," *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992), and "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict," *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). *See also Schlup v. Delo*, 513 U.S. 298, 250 (1995) (stating that, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review").

Under Texas law, a person is guilty of possessing a deadly weapon in a penal institution if "he intentionally, knowingly, or recklessly . . . carries on or about his person a deadly weapon" or "possesses or conceals a deadly weapon in the penal institution." TEX PENAL CODE § 46.10. The Texas penal code defines a "deadly weapon" as either "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46).

"Homemade weapons or 'shanks' can be considered deadly weapons." *Barrera v. State*, 2010 WL 1655478, at *3 (Tex. App. -Houston [14 Dist.], 2010). To decide whether an object was a deadly weapon, "a jury may consider all facts, including (1) the physical proximity between the victim and the object, (2) the threats or words used by the defendant, (3) the size and shape of the weapon, (4) the weapon's ability to inflict death or serious injury, and (5) the manner in which the defendant used the weapon." *Adame v. State*, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002) (Meyer, J., concurring). Whether an object is "capable of causing death or serious bodily injury" depends on the facts that actually existed at the time of the offense. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

Here, the Texas court evaluated the evidence showing that Romero possessed a deadly weapon and "conclude[d] that viewed in the light most favorable to the jury's

guilty verdict, the evidence sufficiently supports the jury's finding that the weapon used by [Romero] was deadly." *Romero*, 331 S.W.3d at 84. Romero argues that the trial evidence was insufficient because it did not show that he actually caused any serious bodily injury. (Docket Entry No. 47 at 4). Texas law, however, did not require such a showing. Instead, Texas law allowed for his conviction if he possessed a weapon *capable* of causing such an injury. *See Johnson v. State*, 509 S.W.3d 320, 324 n.6 (Tex. Crim. App. 2017).

The state court's decision was not unreasonable in finding that sufficient evidence supported Romero's conviction. Trial testimony explained that a shank like that brandished by Romero could be a deadly weapon. Testimony showed that Romero used a shank to stab other inmates, causing them to suffer injuries requiring hospitalization and pain medication. Whether or not Romero's assault actually caused life-threatening injuries, the trial testimony unequivocally showed that his weapon was, at a minimum, capable of causing such. Moreover, the nature, extent, and severity of the wounds caused by Romero's shank would allow a reasonable jury to find that he possessed a deadly weapon without needing medical testimony to establish that fact. Considering the trial testimony and the requirements of state law, and doing so in a light most favorable to the jury's verdict, Romero has not shown that the state court's adjudication of his claim was contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d)(1).

## CERTIFICATE OF APPEALABILITY

Under AEDPA, a prisoner cannot seek appellate review from a lower court's judgment without receiving a Certificate of Appealability ("COA"). *See* 28 U.S.C.

§ 2253(c). Romero has not yet requested that this Court grant him a COA, though this Court can consider the issue *sua sponte*. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000). A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Fifth Circuit holds that the severity of an inmate's punishment, even a sentence of death, "does not, in and of itself, require the issuance of a COA." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). The Fifth Circuit, however, anticipates that a court will resolve any questions about a COA in the death-row inmate's favor. *See Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. On the other hand, a district court that has denied habeas relief on procedural grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484; *Miller-El*, 537

U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Having considered the merits of Romero's petition, and in light of AEDPA's standards and controlling precedent, this Court determines that a COA should not issue on any claim.

## CONCLUSION

For the reasons described above, the Court **GRANTS** Respondent's motion for summary judgment, **DENIES** Romero's petition, and **DISMISSES** this case **WITH PREJUDICE**. All other requests for relief are **DENIED**. The Court will not certify any issue for appellate review.

SIGNED at Galveston, Texas, this 26th day of April, 2018.

_____
George C. Hanks Jr.
United States District Judge